### *In re* RUMSEY'S WILL.

*(Supreme Court, General Term, Fifth Department. April 13, 1892.)*

1. POWERS OF EXECUTORS—CARRYING ON BUSINESS.
   A provision in a will appointing three executors, and directing them to carry on testator's business for a period of five years, unless, in the judgment of a majority of them, it should prove "unprofitable or disastrous to my estate," in which case they were to dispose of the business, and divide the proceeds as directed by the will, is valid.

**2. SAME—WHO MAY OBJECT.**

    Where such business was conducted on a profitable basis since testator's death, and only one executor, who had no pecuniary interest in the estate, and one creditor, who was amply secured, opposed the further continuance of the business, the executors will not be disturbed in their administration of the estate.

**3. SAME—ACCOUNTING—PERSONS INTERESTED IN ESTATE.**

    A co-executor under a will, though he has no pecuniary interest in the estate, is "a person interested in the estate," within Code Civil Proc. § 2726, so as to entitle him to maintain a proceeding for the settlement of accounts against his co-executors.

    Appeal from surrogate's court, Seneca county.

    Proceeding by Eugene A. Rumsey, one of the executors of the last will of John A. Rumsey, deceased, against his co-executors, Samuel Waller and Andrew G. Mercer. From a decree of the surrogate directing a final settlement and distribution of the estate, Samuel Waller and Andrew G. Mercer, co-executors, and Anna Rumsey, Muriella R. Whitman, Ariana R. Micks, Lillias R. Sanford, and Elizabeth R. Mercer, legatees, and Rumsey & Co., Limited, creditors, appeal. Reversed.

    Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

    *J. H. Hammond* and *F. L. Manning,* for appellants. *C. A. Hawley,* for respondents Jennie B. Rumsey and others. *P. H. Van Auken,* for respondent Eugene A. Rumsey.

    MACOMBER, J. John A. Rumsey, the testator, died at Seneca Falls, N. Y., May 30, 1888, leaving a last will and testament, which was duly admitted to probate by the surrogate's court on the 11th day of June, 1888, and letters testamentary thereon were on that day issued to Eugene A. Rumsey, the petitioner, and Samuel Waller and Andrew G. Mercer, executors named in the will, all of whom, having qualified, have acted as such executors since that time to the present. This proceeding was instituted by the executor, Eugene A. Rumsey, for leave to render his own account, and to compel his associates, Samuel Waller and Andrew G. Mercer, to render their accounts. The prayer of the petitioner further is that a citation issue to the persons interested in the estate to attend a judicial settlement of these accounts; that such accounts be judicially settled; and that the court thereupon make such decree in the matter "as the best interests of the parties and justice and equity require." The petition also contains an allegation to the effect that the best interests of all persons interested in the estate demand that the same shall be closed up and settled. The assets of the estate consist almost wholly of the ownership, by the deceased, of 1010 shares of capital stock of a corporation known as "Rumsey & Co., Limited." The entire stock of such company consisted of 1200 shares, of the par value of $100 each. The other shares of stock of this company, at the time of the death of the testator, were held by the petitioner, Eugene A. Rumsey, the testator's daughters, who held 5 shares each, and 170 shares stood in the name of the widow of the deceased. By the 5th, 6th, and 7th clauses of the testator's will, the business of this corporation was directed to be carried on by the executors for a period of five years, unless, in the judgment of a majority of the executors, it should prove "unprofitable or disastrous to my estate to continue the business of said corporation," in which case they were authorized to dispose of the business, and divide the proceeds as directed by the will. The will furthermore directed that, from the profits of the business of this corporation, there should be paid annually the sum of $1,000 to the widow, $1,000 to the petitioner, Eugene A. Rumsey, and $500 to each of his four daughters. The executors, deeming it advisable to carry on such business, substantially conformed to the direction contained in the will; and to that end the executor Eugene A. Rumsey was made president and general manager of the corporation, and he took charge of this business, as well as that of the rest of the testator's estate. The executor Samuel Waller was the principal book-keeper of the company, and he also had charge

of the books pertaining to the other affairs of the estate of the decedent. The testator was liable, at the time of his death, upon commercial paper, as first indorser, for the sum of $22,000, which had been made for the accommodation of this corporation, and upon which a company named as the L. M. Rumsey Manufacturing Company of St. Louis was a second indorser. In order to liquidate this paper, the widow and the children of the testator agreed with the L. M. Rumsey Manufacturing Company that they, respectively, should not receive any money from the estate until the paper upon which the L. M. Rumsey Manufacturing Company, as the second indorser, had been paid, and such company released from liability thereon. The whole business of the company and of the estate was under the same management, and was conducted by Eugene A. Rumsey and by Waller in the company's office. All moneys received were turned over to the corporation, and the corporation in form made all payments in behalf of the estate, although separate books of account of the estate and of the corporation were kept. In the month of November, 1890, Eugene A. Rumsey ceased to be president of the corporation, and the other executor of the will, Andrew G. Mercer, was put in his stead. During this time the indebtedness of the corporation, which, at the time of the decease of the testator, was $140,000, had been reduced to the sum of $117,000. In the year 1890 this indebtedness was increased six or seven thousand dollars by permanent improvements made, and expenses incurred, in providing greater facilities for performing the business of the corporation. As a part of such reduction of the liabilities of the corporation, the outstanding paper, upon which the deceased and the L. M. Rumsey Manufacturing Company were indorsers, had been reduced by the sum of $10,000.

We think that this petition was, on its face, sufficient to give the surrogate jurisdiction to require an accounting by all of the executors. Sections 2723–2726,[1] Code Civil Proc.; *Wood* v. *Brown*, 34 N. Y. 337; *Buchan* v. *Rintoul*, 10 Hun, 183. It is true the petitioner has no pecuniary interest in the estate, for it appears that all provisions made in the will for him had been assigned by him to his wife, Jennie B. Rumsey, before these proceedings were instituted; but he is still an executor, and, as such, has a proper standing in court. It also appears that, of the creditors of the estate, all of whom were cited to attend the accounting, only three actually appeared, no one of whom filed any claim against the estate; and two of these three subsequently filed a written paper with the surrogate, to the effect that they did not desire to interfere with the conduct of the business of the corporation, as directed by the will of the testator. There was left, therefore, only one creditor of the estate, who appeared and united in the petition for an accounting, and for a division of the property under other provisions of the will, and this creditor is shown to have been amply protected by real-estate security.

Aside from the principal question in issue, the learned counsel for the appellants claim that the decree appealed from contained certain erroneous provisions which should be reversed. Among these was the finding by the surrogate that the executors had received, up to the date of the filing of the accounts, the sum of $280 for dividends upon bank-stock. It is true that this bank-stock was specifically bequeathed by the will to the widow, Anna Rumsey, and the same had been delivered to her, and she had received the dividends thereon. But there is nothing in the decision of the surrogate to show that Anna Rumsey would not be entitled to this sum of money after the debts of the estate are satisfied. The finding is, as we understand it, that, as to creditors only, the executors are chargeable with this stock, and with the dividends paid thereon. There is nothing in such finding to preclude, ulti-

<hr/>

[1]Code Civil Proc. § 2726, provides that "a petition, praying for the judicial settlement of an account, and that the executor or administrator may be cited to show cause why he should not render and settle his account, may be presented * * * by * * * a person interested in the estate or fund. * * *"

mately, the transfer of this property by the executors to the widow. The same course of reasoning would also apply to the finding in respect to the annuity payable to the widow, as directed by the will, out of the profits of the business. This finding, also, is only as against creditors, and clearly, in both instances, the executors are chargeable with both the principal and dividends or earnings, to the extent of satisfying fully the demands of creditors. As applicable to these two findings, and possibly to others, it may be said, generally, that while it was competent for the executors to carry on the business of this corporation in the manner provided for by the will, (*Willis* v. *Sharp*, 113 N. Y. 586, 21 N. E. Rep. 705, and cases there cited,) such business was largely at the risk of the executors themselves. If any profits were derived therefrom, they went into the *corpus* of the estate. If losses were sustained through the fault or negligence of the executors, they would fall upon the executors personally. But the decision of the surrogate is to the effect that not only was the provision of the will permitting the executors to carry on the business void, but that such business had become "unprofitable and disastrous." In this conclusion we are constrained, under the facts disclosed, to differ from the learned surrogate. The duty of passing upon the facts is especially enjoined upon us by Code Civil Proc. §§ 2586, 2587. A very substantial diminution of the indebtedness of the testator was shown during the time that the business was carried on, and there is nothing in the record before us to indicate that the same degree of prosperity would not attend the business in the future. We should not, as it seems to us, be inattentive to the almost unanimous wish of the parties interested in this estate to permit the executors to conduct the business under the provisions of the will, if they deem it for the best interests of the estate so to do. We do not find in the case any allegation or proof that the business had been or is likely to be disastrous, or even unprofitable; nor any allegation or proof that the executors, other than this petitioner, are not able to respond to the demands of creditors in case the business so conducted by them should prove to be unprofitable through any fault of theirs. In these circumstances, we think that a proper course would be to permit the executors to continue the administration of the estate in the manner directed by the will, at least until a case differing in its essential facts from this one is presented to the court. It follows that that part of the decree appealed from, by which it was adjudged that the executors have no power to carry on the business of the corporation of Rumsey & Co., Limited, and that they proceed immediately to sell the personal estate not specifically bequeathed, including the 1010 shares of the capital stock of the corporation of Rumsey & Co., Limited, and to convert the residue of the testator's estate into money, should be reversed, but in other respects affirmed. Decree of the surrogate of Seneca county modified as indicated in the opinion, and, as so modified, affirmed, without costs of this appeal to either party. All concur.

---

CHARD et al. v. HOLT et al.

(*Supreme Court, General Term, Fifth Department.* April 13, 1892.)

TAX-TITLES—NOTICE TO MORTGAGORS—ESTOPPEL.

　　Where defendant, the holder of a tax-deed and of a certificate of a tax-sale for the same land, representing sales for delinquent taxes of different years, gives notice to plaintiffs, the holders of a mortgage on such land, who are ignorant of the earlier tax-sale, requiring them to redeem the land from the later tax-sale, and plaintiffs pay the whole amount of such taxes, and defendant receives and retains such money, defendant is estopped to assert any title to the land under the earlier tax-sale.

Appeal from circuit court, Chautauqua county.

Ejectment by Louisa P. Chard and another, administrators with the will annexed of Rufus C. Palmer, deceased, against Horatio N. Holt and others. From a judgment for defendants, plaintiffs appeal. Reversed.